[THE STATE EX REL.] MONROE *v*. MAHONING COUNTY BOARD OF

ELECTIONS.

[Cite as *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections,*

137 Ohio St.3d 62, 2013-Ohio-4490.]

*Elections—Prohibition—Action to compel board of elections to disqualify independent candidate from running for office—Independent candidate's declaration of nonaffiliation must be made in good faith—Board of elections did not abuse its discretion—Writ denied.*

(No. 2013-1473—Submitted October 8, 2013—Decided October 10, 2013.)

IN PROHIBITION.

_____

**Per Curiam.**

{¶ 1} Relator, Cecil Monroe, seeks a writ of prohibition to prohibit respondent, the Mahoning County Board of Elections, from placing the name of Demaine Kitchen on the November 5, 2013 general election ballot as an independent candidate for the office of mayor of Youngstown. Monroe contends that Kitchen is actually a Democrat and that his profession of independence was not made in good faith, as required by R.C. 3513.257 and *Morrison v. Colley*, 467 F.3d 503 (6th Cir.2006).

{¶ 2} We find that Monroe has failed to satisfy his burden of proof and deny the writ. In addition, we deny Monroe's motion to strike the board's answer on the grounds of improper service.

### Facts

{¶ 3} On May 6, 2013, Kitchen filed a nominating petition to run as an independent candidate for mayor of Youngstown. Monroe, a qualified elector, filed a written protest challenging Kitchen's candidacy.

**{¶ 4}** The board held a protest hearing on July 18, 2013, at which both Monroe and Kitchen testified under oath. The hearing produced the following evidence:

**{¶ 5}** (1) Between November 2000 and May 2013, Kitchen voted a Democratic Party ballot on five occasions: May 7, 2002; May 2, 2006; May 8, 2007; March 4, 2008; and May 5, 2009.

**{¶ 6}** (2) In the 2013 primary election, Kitchen voted an issues-only ballot.

**{¶ 7}** (3) Kitchen served on the executive committee of the Mahoning County Democratic Party for a period of years.

**{¶ 8}** (4) Kitchen also represented the Second Ward on the Youngstown City Council as a Democrat.

**{¶ 9}** (5) When Democrat Charles Sammarone became mayor of Youngstown, he hired Kitchen as the "number-two man" in his office. Kitchen described the job as a "nonpartisan appointed position."

**{¶ 10}** (6) When Kitchen accepted Mayor Sammarone's offer, he resigned from both the city council and the Democratic Party executive committee. These resignations occurred more than two years ago.

**{¶ 11}** (7) Kitchen testified that accepting the job with Mayor Sammarone was "not a partisan issue," but rather "an issue of providing and taking care of my family."

**{¶ 12}** (8) Monroe testified that Kitchen had stated, as quoted in an article in a local newspaper, that "[i]t was more strategic to run as an independent" and that he "didn't want to saturate the primary."

**{¶ 13}** (9) When directly asked why he chose to leave the Democratic Party and declare himself an independent candidate, Kitchen expressed his belief that voters were frustrated with "the constant accusations and things" that arise with the two-party system. He went on to say that

the fact that I'm running as an independent is a reflection of my ideology * * *, there are things I would agree with with the Democratic party. There are things I would agree with, I'm sure, with the Republican party. But my decision to run as an independent was truly because I feel that I am an independent as it relates to my world view.

**{¶ 14}** At the end of the hearing, the board voted to deny the protest.

### Procedural history

**{¶ 15}** Monroe filed this original action on September 16, 2013, and the board filed an answer on September 23, 2013. Monroe filed a motion to strike the board's answer on September 26, 2013, and the board filed a memorandum in opposition the next day, September 27, 2013. Pursuant to the accelerated schedule for expedited election cases set forth in S.Ct.Prac.R. 12.08(A)(2), Monroe filed his merit brief and evidence on September 26, 2013, the board filed its merit brief and evidence on September 30, 2013, and Monroe filed a reply brief on October 3, 2013. This cause is now before the court for consideration of the merits.

### Analysis

*The motion to strike*

**{¶ 16}** Parties in expedited election cases must serve all documents upon the other parties by personal service, facsimile transmission, or e-mail. S.Ct.Prac.R. 12.08(C). The board admits that it served its answer on Monroe by ordinary mail only. On September 26, 2013, Monroe filed a motion to strike the board's answer.

**{¶ 17}** S.Ct.Prac.R. 3.11(D)(2) permits the court to deny a motion to strike an improperly served pleading when the complaining party has not been

adversely affected. Even in expedited election cases, a party seeking to have a pleading stricken must demonstrate adversity. *State ex rel. McCord v. Delaware Cty. Bd. of Elections*, 106 Ohio St.3d 346, 2005-Ohio-4758, 835 N.E.2d 336, ¶ 18-21 (decided under former S.Ct.Prac.R. XIV(2)(D)(2)).

{¶ 18} Monroe has not demonstrated any harm from the improper service. He filed his merit brief within the three days allowed by S.Ct.Prac.R. 12.08(A)(2)(a). For this reason, we deny the motion to strike.

*Prohibition*

{¶ 19} For a writ of prohibition to issue in an expedited election case, the relator must establish that (1) the board of elections is about to exercise or has exercised quasi-judicial power, (2) the exercise of that power is not authorized by law, and (3) denying the writ will result in injury for which no other adequate remedy exists in the ordinary course of the law. *State ex rel. Miller v. Warren Cty. Bd. of Elections,* 130 Ohio St.3d 24, 2011-Ohio-4623, 955 N.E.2d 379, ¶ 12; *State ex rel. Columbia Res., Ltd. v. Lorain Cty. Bd. of Elections,* 111 Ohio St.3d 167, 2006-Ohio-5019, 855 N.E.2d 815, ¶ 27.

{¶ 20} The board concedes the existence of the first element: the board exercised quasi-judicial power because it denied Monroe's protest after conducting a hearing that included sworn testimony.

{¶ 21} In an extraordinary action challenging the decision of a board of elections, the standard is whether the board engaged in fraud, corruption, or abuse of discretion or acted in clear disregard of applicable legal provisions. *Whitman v. Hamilton Cty. Bd. of Elections*, 97 Ohio St.3d 216, 2002-Ohio-5923, 778 N.E.2d 32, ¶ 11. Monroe has not alleged fraud or corruption, so the question is whether the board clearly disregarded established law or abused its discretion.

{¶ 22} An independent candidate is "any candidate who claims not to be affiliated with a political party" and who meets the filing requirements set forth in R.C. 3513.257. R.C. 3501.01(I). In *Morrison*, 467 F.3d at 509, the Sixth Circuit

Court of Appeals held that R.C. 3513.257 requires that an independent candidate's declaration of nonaffiliation must be made in good faith. The Ohio secretary of state adopted the *Morrison* holding in a directive to the local boards of elections. Secretary of State Advisory Opinion No. 2007-05.

{¶ 23} Monroe alleges that the board abused its discretion by placing Kitchen's name on the ballot. According to Monroe, Kitchen's declaration of disaffiliation was not made in good faith, as demonstrated by Kitchen's voting history, his employment in the office of Mayor Sammarone, and his "well established and long standing relationships with prominent members in the Democratic Party."

{¶ 24} The evidence submitted by Monroe shows that Kitchen has voted a Democratic Party ballot five times, most recently in May 2009. There is no evidence that Kitchen has voted in a Democratic primary, held elective office as a Democrat, or held a position on the Democratic Party central committee at any time *after* filing his declaration of independent candidacy and nominating petition on May 6, 2013. In Advisory Opinion No. 2007-05, the secretary of state, relying on *Morrison*, opined that a candidate's prior voting history alone is an insufficient basis for disqualifying an independent candidate.

{¶ 25} Monroe argues that Kitchen's voting history should be considered in tandem with the fact that he is the "number-two man" in the administration of a Democratic mayor. However, there is no evidence in the record as to Kitchen's title, his duties, or the extent to which he has policy-making responsibilities or duties that are more administrative in nature. No Ohio court has ordered the disqualification of an independent candidate based on the fact that he or she holds a nonelective position in a branch of government. And even if a court were inclined to do so, it would take a stronger evidentiary record than the record in this case to show by clear and convincing evidence that the candidate's claim to be an independent was false or not made in good faith.

{¶ 26} The fact that Kitchen has friendships with members of the Democratic Party is irrelevant. For one thing, Kitchen testified that he also has Republican friends. Moreover, disaffiliation from a party does not require one to abandon all friends and acquaintances.

{¶ 27} We also find that Kitchen's remark that it was "more strategic" to run as an independent is not disqualifying. *See State ex rel. Livingston v. Miami Cty. Bd. of Elections*, 196 Ohio App.3d 263, 2011-Ohio-6126, 963 N.E.2d 187, ¶ 35 (2d Dist.) (evidence that candidate acted on a calculation that he would have a better chance of winning as an independent fails to rise to level of clear and convincing evidence that claim of disaffiliation was a sham).

{¶ 28} Monroe cites two cases in which appellate courts affirmed decisions by boards of elections to disqualify independent candidates: *State ex rel. Lorenzi v. Mahoning Cty. Bd. of Elections*, 7th Dist. Mahoning No. 07 MA 127, 2007-Ohio-5879, and *State ex rel. Wilkerson v. Trumbull Cty. Bd. of Elections*, 11th Dist. Trumbull No. 2007-T-0081, 2007-Ohio-4762. However, in both cases, the putative independent candidate voted in a partisan primary *after* submitting a nominating petition to run as an independent. *Lorenzi* at ¶ 1; *Wilkerson* at ¶ 24.

{¶ 29} In summary, the evidence does not demonstrate an abuse of discretion by the board.

*Laches*

{¶ 30} We also note that Monroe failed to act with the "utmost diligence" required of relators in election cases. *State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7. Monroe learned of the board's decision to deny his protest on July 18, 2013, yet he waited two months to file his suit. He attributes this delay to a mistaken belief that he had 45 days to seek review in this court, but he admits that he learned of his error in late August and still waited more than three weeks to file suit. Thus, laches

presents an alternative basis upon which to deny the writ. *Rust v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 139, 2005-Ohio-5795, 841 N.E.2d 766, ¶ 15.

**Conclusion**

**{¶ 31}** Based on the foregoing, we find that Monroe has failed to demonstrate his entitlement to an extraordinary writ of prohibition.

Writ denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

O'NEILL, J., concurs in judgment only.

_____

Cecil Monroe, pro se.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Linette M. Stratford and Gina DeGenova Bricker, Assistant Prosecuting Attorneys, for respondent.

_____