**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Save Your Courthouse Commt. v. Medina,* Slip Opinion No. 2019-Ohio-3737.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3737

THE STATE EX REL. SAVE YOUR COURTHOUSE COMMITTEE *v*. THE CITY OF MEDINA ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Save Your Courthouse Commt. v. Medina,* Slip Opinion No. 2019-Ohio-3737.]**

*Prohibition and mandamus—Writ of prohibition sought to declare city ordinance invalid and prevent city fees from being used to build a new courthouse—Claim for writ of prohibition dismissed—Ordinance passed by the city council was an exercise of legislative, not judicial, power—Writ of mandamus sought to compel board of elections and city to allow an additional ten-day period to gather signatures after board determined there were not sufficient valid signatures to place initiative measure on the ballot—Writ of mandamus denied—Article II, Section 1g of the Ohio Constitution does not impose a duty to allow additional time to gather signatures in support of a municipal initiative petition.*

(No. 2019-1154—Submitted September 11, 2019—Decided September 17, 2019.)

IN MANDAMUS and PROHIBITION.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, relator, Save Your Courthouse Committee, seeks writs of mandamus and prohibition against respondents city of Medina and its director of finance (collectively, "the municipal respondents"), as well as respondent Medina County Board of Elections. We dismiss the prohibition claim for failure to state a claim, and we deny the mandamus claim on the merits.

## I. Background

{¶ 2} The city of Medina and Medina County have entered into an agreement to consider the design and plan for a combined city and county courthouse. The project would move the municipal court into the same structure as the county courts.

{¶ 3} The committee alleges that the project would require the demolition of all but the front of the 1841 courthouse, located at 99 Public Square, as well as the entire 1969 courthouse addition, located at 93 Public Square. The municipal respondents deny these allegations.

*A. Facts relevant to the prohibition claim*

{¶ 4} On June 10, 2019, the Medina City Council's Finance Committee considered a proposed agreement between the city and the county to share the cost of retaining an architect, Brandstetter Carroll, Inc., to design a new courthouse. The finance committee approved the contract, which meant that it could be considered by the city council.

{¶ 5} The city council held a meeting on June 24 at which it discussed funding the Brandstetter Carroll design. During the meeting, a proposed ordinance, No. 98-19, was added to the agenda. The proposed ordinance, which had not been included in the meeting agenda or the informational packet distributed in advance of the meeting, authorized the mayor to enter into an agreement with the county

2

commissioners to share design, planning, and construction costs for the project. The council approved the ordinance as an emergency measure.

{¶ 6} The next day, pursuant to the city council's authorization, the mayor executed an agreement to share the costs for the design, planning, and construction of a new city and county courthouse.

*B. Facts relevant to the mandamus claim*

{¶ 7} The committee prepared an initiative petition that would allow city electors to vote on the courthouse project. The petition proposed to enact the following measure:

REQUIRE VOTE ON COURTHOUSE

Absent a majority vote of the qualified electors who are residents of the City of Medina, Ohio, ("the City"), the City shall not:

1) authorize, appropriate, or spend any funds for, or

2) use any city resources to carry out, or facilitate carrying out,

any demolition or construction activity (whether internal or external) at the Medina County Courthouse or any structure located at 93 and/or 99 Public Square, Medina, Ohio. This restriction shall have the effect of law and shall be effective for a period of five (5) years.

(Capitalization sic.)

**{¶ 8}** On July 20, the committee filed a certified copy of the proposed initiative measure with Keith Dirham, the city's finance director.[1] On July 26, the committee submitted 1,017[2] petition signatures to Dirham. In the cover letter accompanying the submission, committee member Patricia Walker wrote:

> Since the Charter of the City of Medina does not specify, it is my understanding that the state law and practice of the Medina County Board of Elections is to allow any petitioners an additional ten days to obtain signatures of qualified Medina City electors if the Board of Elections finds that the petitions do not contain the requisite number of signatures. On behalf of the Save Your Courthouse Committee, we would like that opportunity to obtain more signatures if we have not submitted enough signatures to have this measure placed on the ballot.

**{¶ 9}** As required by R.C. 731.28, Dirham held the petition for ten days for public inspection. On August 6, he transmitted the petition to the board of elections.

**{¶ 10}** On August 7, the board of elections advised Dirham that the petition did not have enough valid signatures to qualify for the ballot. To qualify for the ballot, the petition had to contain at least 983 valid signatures, but the board of elections verified only 690 valid signatures. Later that same day, Dirham informed the committee of the signature shortfall.

**{¶ 11}** A few hours later, Walker responded to Dirham with the following e-mail message:

---

1. Before circulating a municipal initiative petition, a petition committee must file a certified copy of the proposed measure with the city auditor or village clerk. R.C. 731.32. In Medina, the finance director serves as the municipal fiscal officer. Medina City Charter, Article V, Section V-3(c).
2. The official report of the board of elections shows that only 1,016 signatures were submitted for verification. The discrepancy is not material.

The Ohio Constitution and the past practice that has been consistently adhered to by the Board of Elections, should grant the Committee an additional 10 days to gather the needed number of signatures to place the measure on the ballot this November. Do we have your authorization to begin collection of the additional signatures beginning August 8, 2019?

{¶ 12} Dirham forwarded Walker's question to Gregory Huber, the municipal law director, who responded to Walker the next day. Huber wrote:

In my opinion, no city official has the authority to either authorize or deny authorization to you with respect to collecting additional signatures.

Moreover, I do not believe the Ohio Constitution allows you an additional 10 days to obtain signatures as I believe the additional 10 days only applies to State issues. The initiative petition that we are talking about does not involve a State issue. If you are thinking differently, let me know as it would not be the first time I am dead wrong.

{¶ 13} On August 8, Walker asked again whether the committee would be afforded ten additional days to gather signatures. Huber responded the next day, again stating that the provision for a ten-day extension to collect additional signatures applied only for statewide petitions.

{¶ 14} The next day, Walker asked the Medina County prosecutor and the director of the board of elections if they agreed with the city law director's opinion that the committee was not entitled to a ten-day period to collect additional

signatures. The county prosecutor replied that he was unable to answer her question.

{¶ 15} On August 13, Walker appeared before the board of elections to request the additional ten days. The minutes from the meeting state:

> The Chair stated that the [board] had consulted with the Prosecutor's Office on the Courthouse Initiative Petition. The opinion of the prosecutor is that State Law does not allow an additional ten days for collecting signatures in the case of a municipal initiative.

The board voted unanimously to deny the request for an extra ten days to collect signatures.

## II. Procedural history

{¶ 16} The committee filed its complaint for writs of prohibition and mandamus on August 19. Because the complaint was filed within 90 days of the relevant election, the case was automatically expedited pursuant to S.Ct.Prac.R. 12.08.

## III. Legal analysis

### A. Laches

{¶ 17} As a preliminary matter, the municipal respondents assert a laches defense. Laches may bar relief in an election-related matter if the person seeking relief fails to act with the " 'utmost diligence.' " *State ex rel. Monroe v. Mahoning Cty. Bd. of Elections*, 137 Ohio St.3d 62, 2013-Ohio-4490, 997 N.E.2d 524, ¶ 30, quoting *State ex rel. Fuller v. Medina Cty. Bd. of Elections*, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7. The elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4)

prejudice to the other party. *State ex rel. Carrier v. Hilliard City Council*, 144 Ohio St.3d 592, 2016-Ohio-155, 45 N.E.3d 1006, ¶ 8.

{¶ 18} The municipal respondents argue that the committee unreasonably delayed in circulating and submitting its petitions. They point out that the city council approved Ordinance No. 98-19 on June 24 but the committee did not begin to gather signatures until July 20 and did not file its signed petitions until July 26, "the cusp of the 90-day deadline on August 7, 2019 to get the measure certified and placed on the ballot." The municipal respondents claim to have been prejudiced by this delay because the committee's "failure to use utmost diligence to start the initiative process caused this case to become an expedited election case."

{¶ 19} We have applied laches in election cases when a relator unreasonably delays in filing a lawsuit to challenge an adverse decision by a board of elections. *See, e.g., State ex rel. Citizens for Responsible Green Govt. v. Green*, 155 Ohio St.3d 28, 2018-Ohio-3489, 118 N.E.3d 236, ¶ 17, 27 (applying laches when relator waited 56 days after board's decision before filing mandamus complaint). Laches also may bar a lawsuit when an interested party unreasonably delays in filing a protest with the board of elections. *See, e.g., Mason City School Dist. v. Warren Cty. Bd. of Elections*, 107 Ohio St.3d 373, 2005-Ohio-5363, 840 N.E.2d 147, ¶ 14 (relators waited 90 days to file protest). And laches applies when both types of delay—filing the protest and filing the complaint—combine to cause prejudice. *See, e.g., State ex rel. Chillicothe v. Ross Cty. Bd. of Elections*, 123 Ohio St.3d 439, 2009-Ohio-5523, 917 N.E.2d 263, ¶ 10 (city delayed filing protest for 119 days and delayed filing suit for 26 days).

{¶ 20} These scenarios all share one thing in common: the relator had an alleged legal right to vindicate, either in a protest before the board or in a court action for an extraordinary writ. Our cases emphasize that the first element of the laches analysis is an unreasonable delay or lapse of time in asserting a right. *See, e.g., Carrier*, 144 Ohio St.3d 592, 2016-Ohio-155, 45 N.E.3d 1006, at ¶ 8; *State ex*

*rel. Leneghan v. Husted*, 154 Ohio St.3d 60, 2018-Ohio-3361, 110 N.E.3d 1275, ¶ 18. But in this case, at the time the city council approved Ordinance No. 98-19, the committee had no legal interest to vindicate; it had only a process for placing an initiative on the ballot and a specified time by which to complete the process in order to qualify for the November 2019 ballot. If laches were to apply in this situation, petition circulators could no longer rely on the deadlines established by the Revised Code (or local laws) for submitting petitions. Rather, circulators would be subject to a duty to act with haste in the gathering of their petition signatures, with no clear idea when the petitions would need to be submitted.

{¶ 21} We decline to expand the laches doctrine in the manner suggested by the municipal respondents. Laches is a defense that we apply sparingly in expedited election cases. *State ex rel. Duclos v. Hamilton Cty. Bd. of Elections*, 145 Ohio St.3d 254, 2016-Ohio-367, 48 N.E.3d 543, ¶ 8. There is no need to expand the scope of that defense to the circumstances here.

{¶ 22} We reject the laches defense and proceed to decide the case on its merits.

### B. Prohibition

{¶ 23} Three elements are necessary for a writ of prohibition to issue: the exercise of judicial (or quasi-judicial) power, the lack of authority to exercise that power, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13.

{¶ 24} In the second count of the complaint, the committee "requests that Ordinance No. 98-19 be declared invalid and of no further effect." In addition, the committee asks that the city "be prohibited from compensating or reimbursing the County of Medina, Bradstetter Carroll architects, or anyone else that the City of Medina would have been authorized to pay money to if Ordinance No. 98-19 were a valid ordinance of the City of Medina."

**{¶ 25}** The crux of the committee's argument is that Ordinance No. 98-19 is invalid because the city council passed it as an emergency measure.[3] Article III, Section III-11 of the Medina City Charter states that "[n]o action of the [city] Council in authorizing * * * the surrender or joint exercise of any of its powers * * * shall be taken as an emergency measure." According to the committee, the city, in the ordinance, either surrendered its power to design and plan the courthouse or provided for the exercise of that power jointly with the county. Therefore, the committee asserts, "Ordinance No. 98-19 cannot be valid as it was passed as an emergency measure."

**{¶ 26}** These allegations do not state a claim for a writ of prohibition because the committee cannot satisfy the first and fundamental element of a prohibition claim: the exercise of judicial or quasi-judicial power. "Quasi-judicial authority" refers to "the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." *State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, Ohio St.3d 184, 186, 718 N.E.2d 908 (1999).

**{¶ 27}** When a public entity takes official action but does not conduct proceedings akin to a judicial trial, prohibition will not issue. For example, a board of elections did not exercise quasi-judicial authority when it denied an election protest, because it did not consider sworn testimony, receive documents into evidence, or in any other fashion "conduct a hearing sufficiently resembling a judicial trial." *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections*, 90 Ohio St.3d 238, 242, 736 N.E.2d 893 (2000). Likewise, in *Wright* at 186, we affirmed the denial of a writ of prohibition against the registrar of the Bureau of Motor Vehicles because the issuance of an administrative license suspension, without a formal hearing, was not quasi-judicial.

---

3. An emergency measure takes effect immediately, upon approval by at least two-thirds of the council members. Medina City Charter, Article III, Section III-11.

**{¶ 28}** Here, the committee targets the exercise of *legislative*—not *judicial*—power by city council. The committee disputes this conclusion. The committee claims that the city exercised quasi-judicial power "when [it] reviewed the case law and statutes * * * and decided that the [committee] was not entitled to the Constitution's 10 additional days to gather signatures." The committee's logic would transform *every* legislative decision into a quasi-judicial act, if the legislature considered the law in reaching its decision. Although the city took an action that had legal ramifications, it did not receive evidence, place witnesses under oath, or take any other actions that qualify as judicial.

**{¶ 29}** The committee argues that this case is similar to *State ex rel. Home Fed. S. & L. Assn. of Hamilton v. Moser*, 40 Ohio St.2d 94, 320 N.E.2d 672 (1974), *rev'g* 40 Ohio St.2d 42, 319 N.E.2d 361 (1974), in which we issued a writ of prohibition to prevent a board of elections from placing a measure on the ballot, even though no protest had been filed, *see* 40 Ohio St.2d at 43, and therefore the board had never conducted a quasi-judicial hearing. But even assuming the committee has characterized *Moser* correctly, that decision is inconsistent with our more recent decisions, in which we have diligently policed the limits of our prohibition powers. Thus, when a board of elections conducts a protest hearing pursuant to statute, it is exercising quasi-judicial authority. *See, e.g., State ex rel. Varnau v. Wenninger*, 128 Ohio St.3d 361, 2011-Ohio-759, 944 N.E.2d 663, ¶ 13. But "the mere fact that the board of elections held a hearing resembling a judicial trial" does not mean that the board exercised quasi-judicial power if there was no legal *requirement* for the board to hold a hearing. *State ex rel. Scherach v. Lorain Cty. Bd. of Elections*, 123 Ohio St.3d 245, 2009-Ohio-5349, 915 N.E.2d 647, ¶ 23; *see also State ex rel. Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939, 951 N.E.2d 405, ¶ 21 ("The *requirement* of conducting a quasi-judicial hearing is the key point of exercising that authority" [emphasis sic]). And it necessarily follows that when a board of elections takes an action without conducting a hearing, the

10

first element for relief in prohibition cannot be met. *State ex rel. Miller v. Warren Cty. Bd. of Elections*, 130 Ohio St.3d 24, 2011-Ohio-4623, 955 N.E.2d 379, ¶ 16-17.

{¶ 30} In its reply brief, the committee also argues that this case involves quasi-judicial power because "it involves a courthouse and a judge's power to order sufficient facilities for the judge's court." The theory here is that the city acted to preempt the municipal judge from exercising judicial authority to order the city to provide a better facility. But even if, as the committee maintains, the city sought to preempt an exercise of judicial authority, that action does not mean the city was itself exercising quasi-judicial authority.

{¶ 31} Finally, the committee argues that "the subject matter of this lawsuit" is judicial because the Rules of Superintendence "contain many provisions concerning the design and planning of courthouses." The question here turns not on the subject matter of the dispute but on the nature of the power exercised by the entity whose action is being challenged. And because that power was legislative in nature, not judicial, it is not subject to restraint by prohibition.

{¶ 32} Because the city did not exercise quasi-judicial authority, prohibition is not available to block the ordinance. In reaching this decision, we express no opinion as to the merits of the committee's claim that the passage of this ordinance as an emergency measure violated the city charter. We simply dismiss the prohibition claim for failure to state a claim.

### C. Mandamus

{¶ 33} To be entitled to a writ of mandamus, a party must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

**{¶ 34}** The committee seeks a writ of mandamus to compel the municipal respondents and the board of elections to (1) allow the committee an additional ten-day period in which to gather petition signatures, (2) "clearly notify [the committee of] the exact time and date that the additional ten-day period for obtaining additional signatures begins and ends," and (3) place the initiative measure on the November 5, 2019 ballot if the committee gathers the necessary signatures. The question presented by these requests is whether Ohio law gives the committee the right to ten additional days to gather supplemental signatures.

**{¶ 35}** Article II, Section 1f of the Ohio Constitution provides, "The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law." R.C. 731.28 sets forth the manner in which municipal initiative petitions are to be submitted, verified, and certified to boards of elections. R.C. 731.28 establishes the signature threshold to qualify for the ballot and describes the process by which boards of elections must verify the petition signatures. The statute does not give circulators the right to cure a shortfall by gathering and submitting additional signatures.

**{¶ 36}** The right to propose ordinances by initiative petition is also expressly guaranteed by the Medina City Charter, Article VII, Section VII-1. The charter lays out a detailed procedure for zoning-related initiative petitions, *id.*, but is silent as to the procedures governing nonzoning initiative petitions. It does not give circulators the right to gather supplemental signatures.

**{¶ 37}** In support of its alleged right to a ten-day cure period, the committee looks to Article II, Section 1g of the Ohio Constitution, which provides that "[i]f the petitions or signatures are determined to be insufficient, ten additional days shall be allowed for the filing of additional signatures to such petition." However, Section 1g "appl[ies] only to *statewide* initiative and referendum petitions," not to

12

local initiatives and referenda. (Emphasis added.) *State ex rel. Huebner v. W. Jefferson Village Council*, 72 Ohio St.3d 589, 591, 651 N.E.2d 1001 (1995) (citing cases), *rev'd on reconsideration on other grounds,* 75 Ohio St.3d 381, 662 N.E.2d 339 (1996).

{¶ 38} But the committee argues that Section 1g *does* apply to local initiatives because it fills gaps in the city charter's initiative procedures. According to the committee, this court "has established that Ohio law must be read into the municipal initiative process if the Charter of the City does not have any contrary provision." The committee cites *State ex rel. Harris v. Rubino*, 155 Ohio St.3d 123, 2018-Ohio-3609, 119 N.E.3d 1238, as authority for this proposition.

{¶ 39} The committee misconstrues *Harris*. That case does *not* suggest that the constitutional procedures in Section 1g governing statewide petitions fill gaps in a municipal charter's initiative procedures. *Harris* merely reaffirmed the unremarkable rule that Revised Code provisions governing municipal petitions apply until and unless preempted by a municipal charter that expressly conflicts with state law. *Id*. at ¶ 16.

{¶ 40} Indeed, to import Section 1g's procedures into local initiatives would conflict with Article II, Section 1f of the Ohio Constitution, which requires that the powers of local initiative and referendum shall be exercised "in the manner now or hereafter *provided by law*" (emphasis added), that is, by an act of the General Assembly or of the legislative authority of a charter municipality. *Dillon v. Cleveland*, 117 Ohio St. 258, 275-277, 158 N.E. 606 (1927). Adopting the committee's argument would also thwart the will of the General Assembly, which chose not to include a ten-day cure period when it enacted the provisions governing municipal petitions in R.C. 731.28.

{¶ 41} The committee also relies on *State ex rel. Spadafora v. Toledo City Council*, 71 Ohio St.3d 546, 644 N.E.2d 393 (1994), to argue that state law can apply to local initiative petitions. But *Spadafora* did not hold that circulators of

local measures are required to satisfy requirements applicable to statewide ballot measures. Rather, as we explained in later decisions, *Spadafora* " 'merely requires that *if* a municipal initiative or referendum petition includes an R.C. 3519.05 circulator's compensation or elector-knowledge statement, it may be required to comply with R.C. 3519.06 to the extent that the statements must be truthful and cannot be altered.' " (Emphasis sic.) *State ex rel. Commt. for the Charter Amendment Petition v. Hamilton*, 93 Ohio St.3d 508, 510, 757 N.E.2d 294 (2001), quoting *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 229, 685 N.E.2d 754 (1997).

{¶ 42} Next, the committee argues that the Medina City Charter expressly incorporates Article II, Section 1g of the Ohio Constitution into its petition procedures. The first paragraph of Article VII, Section VII-1 of the Medina City Charter, governing initiatives, reads:

> Ordinances and other measures may be proposed by initiative petition and adopted by election * * *, to the extent and *in the manner now or hereafter provided by the Constitution*, the laws of Ohio, or this Charter.

(Emphasis added.) The committee argues that the " 'manner' of the Ohio Constitution includes the ten days to gather additional signatures." But the charter refers to the manner set forth in the Constitution for proposing *municipal ordinances* by initiative petition: the language the charter uses—"in the manner now or hereafter provided by"—directly tracks the language of Section 1f, governing the powers of municipalities. The charter language does not expressly impose the terms of Section 1g, which is the provision that allows ten days to gather additional signatures if the original petition falls short.

**{¶ 43}** The committee has abandoned its argument that the board of elections has a custom or past practice of allowing an extra ten days when a municipal initiative petition does not contain enough valid signatures. But it insists that "fundamental fairness" requires the additional ten-day period because "[t]he secrecy and the imminent destruction of the Courthouse set[] this cause apart from others." But " 'subjective principles of equity and fundamental fairness' " do not dictate whether a writ of mandamus will issue; instead the question is whether there is a clear legal duty to perform the requested act. *State ex rel. VanCleave v. School Emps. Retirement Sys.*, 120 Ohio St.3d 261, 2008-Ohio-5377, 898 N.E.2d 33, ¶ 26, quoting *State ex rel. Schwaben v. School Emps. Retirement Sys.*, 76 Ohio St.3d 280, 285, 667 N.E.2d 398 (1996).

**{¶ 44}** In short, the committee cannot show that Article II, Section 1g of the Ohio Constitution imposes a duty to allow ten days to gather additional signatures in support of a municipal initiative petition. We therefore deny the requested writ of mandamus.

### IV. Conclusion

**{¶ 45}** For the reasons discussed, we dismiss the claim for a writ of prohibition and we deny the request for a writ of mandamus.

Claim for writ of prohibition dismissed

and writ of mandamus denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DONNELLY, and STEWART, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

————————————

Walker & Jocke Co., L.P.A., Patricia A. Walker, and Ralph E. Jocke, for relator.

S. Forrest Thompson, Medina County Prosecuting Attorney, and Michael K. Lyons, Assistant Prosecuting Attorney, for respondent Medina County Board of Elections.

Gregory A. Huber, Medina Law Director, for respondents city of Medina and Medina Finance Director.

_____